JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Alvin Tyler

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Aaron J. Freiwald, Esquire   Freiwald Law, P.C.
Laura E. Laughlin, Esquire   1500 Walnut Street, 18th Floor
Zachary S. Feinberg, Esquire   Philadelphia, PA 19102    (215) 875-8000

## DEFENDANTS

Southeastern Pennsylvania Transportation Authority
and
Christopher Stokes     Thomas Nestel

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Unjustified and excessive use of force.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   12/7/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| ALVIN TYLER | : | CIVIL ACTION |
| v. | : | |
| SOUTHEASTERN PENNSYLVANIA | : | NO. |
| TRANSPORTATION AUTHORITY | : | |
| and | : | |
| CHRISTOPHER STOKES | : | |
| and | : | |
| THOMAS NESTEL | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
       and Human Services denying plaintiff Social Security Benefits.                               (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. (  )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
       exposure to asbestos.                                                                          (  )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
       commonly referred to as complex and that need special or intense management by
       the court.  (See reverse side of this form for a detailed explanation of special
       management cases.)                                                                            (  )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| __12/7/2021__ | __Aaron J. Freiwald__ | |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |
| __(215) 875-8000__ | __(215) 875-8575__ | __ajf@freiwaldlaw.com__ |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 5234 North Sydenham Street, Philadelphia, PA 19141 _____

Address of Defendant: _____ 1234 Market Street, Philadelphia, PA 19107 _____

Place of Accident, Incident or Transaction: _____ 8000 Essington Avenue, Philadelphia, PA 19153 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/07/2021      _Attorney-at-Law / Pro Se Plaintiff_      78028 _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Aaron J. Freiwald , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 12/07/2021      _Attorney-at-Law / Pro Se Plaintiff_      78028 _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALVIN TYLER<br>5234 North Sydenham Street<br>Philadelphia, PA 19141<br><br>     v.<br><br>SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107<br>    and<br>CHRISTOPHER STOKES, Individually, and<br>as an Agent of SOUTHEASTERN<br>PENNSYLVANIA TRANSPORTATION<br>AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107<br>    and<br>THOMAS NESTEL, Individually, and as an<br>Agent of SOUTHEASTERN<br>PENNSYLVANIA TRANSPORTATION<br>AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107 | CIVIL ACTION<br><br>NO.<br><br><br><br>**JURY TRIAL DEMANDED** |

## I.    INTRODUCTION

On May 11, 2021, Plaintiff Alvin Tyler was attempting to board a SEPTA Night Owl shuttle on his way to work, just as he had done every work day for the previous two and half years. However, on this day, Mr. Tyler was not able to make it to work. As he was waiting to board the SEPTA shuttle, Defendant Christopher Stokes, a police officer employed by the SEPTA Transit Police, unprovoked and without warning, shoved Mr. Tyler to the ground twice. Defendant Stokes shoved Mr. Tyler with significant enough force that Mr. Tyler's wrist was fractured when he hit the ground. The force used by Defendant Stokes was unjustified and excessive.

Defendant SEPTA claims on its website that the SEPTA Transit Police are "dedicated to keeping customers safe and secure." The actions in this case were a complete departure from this commitment and represent a departure from any acceptable standard of police conduct. Further, Defendant SEPTA had previously received multiple complaints regarding Defendant Stokes, yet failed to ensure that he was properly trained or to take other remedial action to ensure this outrageous event did not occur.

## II.    PARTIES

1.    Plaintiff Alvin Tyler is an adult individual residing at 5234 N. Sydenham Street, Philadelphia, Pennsylvania 19141.

2.    Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") is municipal entity operating under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 1234 Market Street, Philadelphia, Pennsylvania 19107.

3.    Defendant SEPTA provides public transportation services within the Philadelphia metropolitan area. In support of its services, Defendant SEPTA maintains its own police department, the SEPTA Transit Police.

4.    With over 260 police officers, the SEPTA Transit Police is the fifth (5th) largest police department in the Commonwealth of Pennsylvania.

5.    At all relevant times, Defendant SEPTA acted by and through its employees, servants and/or agents as a municipal entity operating the SEPTA Transit Police and was the employer of the SEPTA Transit Police employees.

6.    Defendant SEPTA Transit Police Officer Christopher Stokes ("Officer Stokes"), Badge No. 445, was at all relevant times a police officer employed by the SEPTA Transit Police. It is believed that Officer Stokes is a Pennsylvania resident, although his address is unknown to

Plaintiff.  Officer Stokes is being named in an individual capacity and in his official capacity as a SEPTA Transit Police Officer.

7.     Defendant Police Chief Thomas Nestel was at all relevant times Chief of the SEPTA Transit Police and was an adult individual with supervisory control over the Police Officers in the Police Department. It is believed that Chief Nestel is a Pennsylvania resident, although his address is unknown to Plaintiff.  Chief Nestel is being named in an individual capacity and in his official capacity as a SEPTA Transit Police Chief.

8.     At all relevant times, Defendants SEPTA and Chief Nestel had the responsibility of managing its officers and employees, training, discipline and setting official policy for the SEPTA Transit Police Department, including its employees, and was responsible for the excessive force used upon Plaintiff.

9.     At all relevant times, the Defendants acted by and through their actual or apparent employees, servants and/or agents, including but not limited to Officer Stokes, who was in the course and scope of his actual or apparent employment, service and/or agency with all other Defendants.

10.     At all relevant times, Defendants SEPTA, Officer Stokes, and Chief Nestel were acting under color of state law and had the responsibility of observing and protecting the constitutional rights of Alvin Tyler.

## III.   JURISDICTION

11.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, also known as federal question jurisdiction.

12.     Specifically, Plaintiff has brought this action under 42 U.S.C. §1983 because Defendants Officer Stokes and SEPTA used excessive force against Plaintiff and Defendants

SEPTA and Chief Nestel failed to maintain proper policies, procedures, and training to prevent the use of such excessive force.

13.     Further, this Court has supplemental jurisdiction over the state common law claims, pursuant to 28 U.S.C. § 1367.

14.     Venue is proper, pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving raise to Plaintiff's constitutional and common law claims occurred in this District.

## IV.     FACTS

15.     Plaintiff Alvin Tyler began work every day at 4:00 am at Philadelphia Wholesale Produce Market.

16.     Plaintiff worked this job for approximately two and a half years and supported his fiancé and children through this job.

17.     As he had done almost every day for the last two and a half years, on May 11, 2021, Plaintiff arrived at the 69th Street Transportation Center, dressed in his full work uniform, to catch the 3:15 am Night Owl shuttle service.

18.     Like every other night he worked, Plaintiff planned to take the Night Owl shuttle to the 56th Street and Market Street stop, before transferring to the G bus.

19.     That evening, while waiting for the Night Owl shuttle to start boarding, Plaintiff was smoking a marijuana cigarette.

20.     Plaintiff is a medical marijuana patient and legally possesses a Pennsylvania medical marijuana card for his diagnosis of post-traumatic stress disorder ("PTSD") and chronic nerve pain.

21.     As a medical marijuana patient, it is legal for Plaintiff to possess marijuana in public in Pennsylvania.

22.     Further, the Upper Darby city council has decriminalized marijuana possession and use, such that a police officer may not ordinarily arrest or use any force against a citizen for possessing or smoking a small amount of marijuana.

23.     As Plaintiff's turn in line to board the shuttle was approaching, a SEPTA Transit Police officer asked Plaintiff to put out his cigarette.

24.     Plaintiff complied with the SEPTA Transit Police officer's request, put his cigarette out, and placed the unfinished portion of the cigarette back in his cigarette box.

25.     However, while Plaintiff was complying with the first SEPTA Transit Police officer's request, a second SEPTA Transit Police officer, Defendant Stokes, without any warning or explanation, forcefully shoved Plaintiff from the right side, causing him to fall to the ground.

26.     Plaintiff did not see or anticipate Defendant Stokes charging toward him and was unable to brace himself for the impact.

27.     Defendant Stokes used both of his hands when he shoved Plaintiff to the ground.

28.     Defendant Stokes shoved Plaintiff to the ground with such force that Defendant caused Plaintiff's body to slam onto the concrete pavement, with his head and right wrist taking the brunt of the fall.

29.     Defendant Stokes did not say anything to Plaintiff before shoving Plaintiff to the ground.

30.     Defendant Stokes did not provide any warning to Plaintiff before shoving Plaintiff to the ground.

31.     Defendant Stokes did not attempt to use any lesser means of force before shoving Plaintiff to the ground.

32.     Defendant Stokes did not provide any justification for shoving Plaintiff to the ground – and had no justification.

33.     Defendant Stokes used excessive force in shoving Plaintiff to the ground.

34.     As Plaintiff attempted to stand up after being forcefully shoved to the ground, Defendant Stokes used excessive force in shoving Plaintiff to the ground for a second time.

35.     Again, Defendant Stokes did not say anything, provide any warning, or provide any justification to Plaintiff before shoving him to the ground a second time.

36.     Confused and hurt after being forcibly shoved to the ground two times without any justification, Plaintiff stood up and attempted to start filming Defendant Stokes' actions.  At this point, additional SEPTA Transit Police officers intervened and separated Defendant Stokes from Plaintiff.

37.     Defendant Stokes' excessive force in shoving Plaintiff to the ground twice, caused serious injury to Plaintiff's wrist and head.

38.     Despite injuries to Plaintiff's right wrist and head, none of the SEPTA Transit Police officers present at the scene asked Plaintiff if he needed medical assistance or offered to provide any help.

39.     Rather, the SEPTA Transit Police officers present ordered Plaintiff to leave the property and threatened to arrest him for trespassing.

40.     At no point did Defendant Stokes or any of the present SEPTA Transit Police officers arrest Plaintiff or issue any citation against him for committing a crime or otherwise violating the law.

41.     Plaintiff called 911 for emergency assistance after he was assaulted by Defendant Stokes.  When Upper Darby police officers arrived at the scene, the Upper Darby police officers

declined to intervene with the SEPTA Transit Police officers or assist Plaintiff since the station was SEPTA's jurisdiction.

42.     Plaintiff called his fiancé to pick him up and take him to the hospital.

43.     While at Delaware County Memorial Hospital, Plaintiff underwent a CT scan of his cervical spine and his head.  Plaintiff was also diagnosed with a sprain and strain of his wrist and was given a sling for his right arm and wrist.  Plaintiff was instructed to follow-up with an orthopedic specialist.

44.     On May 21, 2021, Plaintiff was examined by Dr. Hannah Lee at Penn Musculoskeletal Center.  Dr. Lee conducted x-rays of Plaintiff's wrist and diagnosed him with either a chipped bone and/or hairline fracture of his right wrist.

45.     On June 7, 2021, Plaintiff underwent a CT scan and a repeat x-ray.  The x-ray revealed that Plaintiff suffered from:

   a.     mildly displaced fracture fragment along the dorsal radius with surrounding soft tissue swelling;

   b.     focal subchondral cystic changes along the distal radius;

   c.     nonspecific cystic changes of the carpus; and

   d.     sclerotic foci of the distal radius at first metacarpal base, which may represent bone islands.

46.     The CT scan from June 7, 2021 revealed that Plaintiff suffered from an intra-articular fracture of the distal radius dorsally with a fragment displaced dorsally about 3 mm and several smaller comminuted fragments and that most of the fracture appeared ununited, indicating that the bone would likely have difficulty healing.

47.     A follow up CT scan on July 16, 2021 revealed that Plaintiff's fracture was largely unchanged.

48.     Following the incident, Plaintiff has been required to work in a light duty capacity.

49.     As a result of Defendants' negligent, reckless, and outrageous conduct, Plaintiff was caused to suffer:

      a.     physical injuries;

      b.     fracture of his right wrist;

      c.     head injury;

      d.     headaches;

      e.     increased risk of harm;

      f.     past and future medical expenses;

      g.     economic damages;

      h.     loss of income;

      i.     emotional distress;

      j.     mental anguish;

      k.     pain and suffering;

      l.     loss of life's pleasures; and

      m.     humiliation and embarrassment.

50.     The assault by Defendant Stokes was captured on his and/or other SEPTA Transit Police Officer's body cameras.  Plaintiff requested the view the body camera footage, but the SEPTA Transit Police denied Plaintiff's request.

51.     Upon routine examination of body camera footage, the SEPTA Transit Police independently opened an internal investigation into Defendant Stokes' excessive force.

52.     Further, Defendant SEPTA has received at least four (4) prior complaints filed against Defendant Stokes, yet he has not received the training necessary to prevent incidents like this.

53.     Within approximately two (2) months, Defendant SEPTA has already permitted Defendant Stokes to return to working in the same position, despite the fact that Defendant SEPTA did not yet complete its investigation into the incident described in this Complaint.

V.      CLAIMS

**COUNT I: 42 U.S.C. § 1983 EXCESSIVE FORCE**
**Plaintiff v. Defendants Officer Stokes, Individually and in his Official Capacity, SEPTA,**
**and Thomas Nestel**

54.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth here.

55.     Defendant Stokes' actions were wrongful, malicious, and reckless and deprived Plaintiff of his constitutional rights, as alleged more fully below.

56.     Defendant Stokes had a duty to avoid infliction of unjustified bodily injury to Plaintiff, to protect his bodily integrity and to not violate his constitutional rights.

57.     Defendant Stokes failed to act as an objectively reasonable officer would have acted in the same or similar circumstances.

58.     That is, Defendant Stokes, without justification and the need to do so, used excessive force as described above when he shoved Plaintiff to the ground twice without legal justification.

59.     Plaintiff never made any threatening gestures towards Defendant Stokes or any other officer, did not fail to comply with any directives of Defendant Stokes or any other officer,

and did not pose an objective immediate threat to the safety of Defendant Stokes or others when Defendant Stokes shoved Plaintiff to the ground twice.

60.     Defendant Stokes was not provoked when he shoved Plaintiff for no lawful or justifiable reason.

61.     The excessive forced used by Defendant Stokes was not objectively reasonable, justified, nor was it necessary under the circumstances.

62.     Defendant Stokes denied Plaintiff of his right to be free from the use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

63.     The force used by Defendant Stokes was objectively unnecessary, excessive and unreasonable under the circumstances, as Plaintiff did not pose an immediate threat to the safety of Defendant Stokes or others and the use of such excessive force was unnecessary.

64.     Plaintiff's injuries are the direct result of Defendants' unreasonable conduct.

65.     Defendant Stokes embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Plaintiff to suffer extreme and severe physical, mental and emotional distress, anxiety, terror and agony.

WHEREFORE, Plaintiff demands judgment in his favor, and against Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, attorney's fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

**COUNT II: 42 U.S.C. § 1983 FAILURE TO TRAIN**
**Plaintiff v. Defendants SEPTA and Thomas Nestel**

66.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth here.

67.     Defendant Stokes was acting under color of law and acting pursuant to customs, practices, and policies of SEPTA in regards to the use of force as authorized and/or ratified by Defendants, specifically SEPTA Transit Police Chief Thomas Nestel.

68.     Defendant SEPTA, under the direction of Police Chief Nestel, developed and maintained a policy of deficient training of its police force in the use of force.

69.     Plaintiff was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the SEPTA Transit Police failing to provide proper training, adequate supervision or discipline in dealing with individuals such as Plaintiff in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

70.     Prior to May 11, 2021, Defendants SEPTA and Chief Nestel knew or should have known that Defendant Stokes exhibited a pattern of escalating encounters within the public.

71.     In a verified statement, Defendant Chief Nestel acknowledged that Defendant Stokes has had four (4) prior complaints submitted against him.

72.     Defendants SEPTA and Chief Nestel failed to adequately train its officers in the following manners:

      a.     Failure to train its officers on when to use force;

      b.     Failure to train its officers on how to use force;

      c.     Failure to train its officers on threat pattern recognition;

      d.     Failure to train its officers on de-escalation techniques;

e.      Failure to train its officers on how to interact with individuals as they were boarding vehicles;

f.       Failure to keep SEPTA customers safe;

g.      Failure to protect SEPTA customers' right to bodily integrity;

h.      Failure to ensure SEPTA officers, including Defendant Stokes, was properly trained;

i.       Failure to respond appropriately to the four (4) prior complaints against Defendant Stokes;

j.       Failure to re-train Defendant Stokes following the four (4) prior complaints;

k.      Failure to remove Defendant Stokes from a position interacting with SEPTA customers thereby putting the customers at an increased risk of injury;

l.       Failure to implement proper training and protocols for use of force;

73.     Each of the above failures reflects a deliberate indifference by Defendants SEPTA and Chief Nestel to the rights of SEPTA passengers, including Plaintiff, and is actionable under 42 U.S.C. § 1983.

74.     Defendant SEPTA and Police Chief Nestel's failure to provide adequate training to its officers on how and when to use force reflect deliberate indifference by Defendants and reckless and conscious disregard for the obvious risk that officers would use excessive force on citizens and made the violations of Plaintiff's constitutional rights foreseeable.

75.     Defendant SEPTA and Chief Nestel's decision to return Defendant Stokes to the line of duty before an investigation into this incident was completed further reflects Defendants' willingness to permit officers to work without adequate training.

76.     Defendant Stokes' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which SEPTA and Police Chief Nestel knew or should have known, but never provided the requisite and proper training.

77.     Defendant SEPTA's failure to properly train and discipline its officers was the proximate cause of the violations of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands judgment in his favor, and against Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, attorney's fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

### COUNT III: 42 U.S.C. § 1983 MUNICIPAL LIABILITY
### UNCONSTITUTIONAL CUSTOM OR POLICY
### Plaintiff v. Defendants SEPTA and Thomas Nestel

78.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth here.

79.     On May 11, 2021, Defendants SEPTA and Chief Nestel deprived Plaintiff of the rights and liberties secure to him by the Fourth and Fourteenth Amendments to the United States Constitution, by knowingly maintaining, enforcing and applying de facto customs, practices and/or polices adopted and/or ratified by SEPTA and the SEPTA Transit Police, with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff specifically.

80.     Defendant Stokes acted under color of law.

81.     Defendant Stokes acted pursuant to an expressly adopted official policy or a longstanding practice or custom (e.g., a *de facto* policy) of Defendant SEPTA.

82.     Defendants SEPTA and Stokes, together with the policymakers and supervisors, maintained, *inter alia*, the following unconstitutional customs, practices, and policies:

a.      Using any amount of force, when no force is justified;

-13-

b.      Using excessive force when no force is justified;

c.      Using excessive force, when only a lesser amount of force is justified;

d.      Using force that is inconsistent with the threat posed;

e.      Failing to adequately train officers regarding the use of force;

f.      Failing to adequately train officers regarding the de-escalation of force;

g.      Failing to adequately train officers regarding using force against a non-threatening suspect;

h.      Failing to adequately train officers regarding passengers boarding SEPTA buses;

i.      Employing and retaining as Officers and other personnel, who Defendants SEPTA and Chief Nestel knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written SEPTA Transit Police policies and for using excessive force;

j.      Inadequately supervising, training, controlling, assigning and disciplining SEPTA Transit Police officers and other SEPTA Transit Police personnel, including officers who Defendant SEPTA knew, or in the exercise of reasonable care, should have known had dangerous propensities and character traits;

k.      Maintaining inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by all officers, who are SEPTA officers;

l.      Failing to adequately discipline SEPTA Transit Police officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

m.      Refusing to discipline, terminate, and/or retrain the officers involved, even where use of force was unjustified;

n.      Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which officers do not report other officers' errors, misconduct or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the

-14-

code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

o.   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police use of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in excessive use of force;

p.   Having and maintaining an unconstitutional custom and practice of using excessive force and covering up police misconduct.  These customs and practices by SEPTA were condoned by Defendants in deliberate indifference to the safety and rights of its civilians, including Plaintiff;

q.   Maintaining inadequate respect and relationships between SEPTA Transit Police management and line-duty officers, such that Defendant SEPTA was unable to effectively supervise, train, control, and discipline its officers, including Defendant Stokes; and

r.   Permitting officers to return to duty despite a failure to fully investigate use-of-force incidents.

83.   By reason of the above policies and practices of Defendant SEPTA, Plaintiff experienced the injuries alleged throughout this Complaint.

84.   Defendants SEPTA and Chief Nestel had either actual or constructive knowledge of the inadequate and reckless polices, practices, and customs alleged above.  Despite having such knowledge, Defendants SEPTA and Chief Nestel condoned, tolerated and through actions and inactions ratified such policies.  Defendants SEPTA and Chief Nestel also acted with deliberate indifference to both the foreseeable effects and consequences of these polices and to the constitutional rights of Plaintiff, and other individuals similarly situated.

85.   By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants SEPTA and Chief Nestel acted with an intentional, reckless, callous disregard for the well-being of Plaintiff and his constitutional rights.  Defendants SEPTA and Chief Nestel's actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

86.     Defendant SEPTA, acting through official polices, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Plaintiff.

87.     Furthermore, the polices, practices, and customs implemented, maintained and tolerated by Defendant SEPTA, were affirmatively linked to, and were a significantly influential force behind Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment in his favor, and against Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, attorney's fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

## COUNT IV: 42 USC §1983 Supervisory Liability
### Plaintiff v. Defendants SEPTA and Chief Nestel

88.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth here.

89.     Defendants were responsible for, acquiesced, and/or were deliberately indifferent through policy, practice, customs, and/or procedure in failing to:

a.     Restrain and punish the use of excessive force by its police officers;

b.     Properly and adequately train, test, and instruct police officers on the proper procedure for effectuating arrest and using force, and thereafter, properly discipline the police officers who use excessive force;

c.     Properly supervise and/or control their police officers;

d.     Restrain the use of excessive force, and have clear, concise and appropriate directives and consequences regarding the same;

e.    Conduct systematic and complete internal affairs investigations and commanding officer investigations resulting in appropriate and documented corrective actions, if necessary, at all levels of the SEPTA Transit Police Department;

f.    Develop, implement, carry out and maintain proper personnel training policies, practices, customs and/or procedures necessary to prevent the use of excessive force;

g.    Permitting psychologically and/or emotionally unfit persons to serve as police officers;

h.    Permit unjustified, unreasonable, and illegal use of force by police officers in general;

i.    Test its officers for emotional and psychological fitness to serve as a police officer;

j.    Train its police officers in appropriate use of exercise of powers;

k.    Properly train, supervise, and discipline officers;

l.    Properly sanction or discipline police officers;

m.    Monitor and evaluate performances of police officers;

n.    Respond and investigate complaints against police officers;

o.    Allowing police officers to engage in conduct that violates the Constitutional rights of citizens;

p.    Train police officers in use of lesser forms of restraint and force;

q.    Have or enforce policies, which focus on de-escalation; and

r.    Have proper training on de-escalation techniques.

90.    The actions of Defendants, as described above, created an unreasonable risk of harm as suffered by Plaintiff.

91.    Defendants knew that this unreasonable risk existed.

92.    Defendants were deliberately indifferent to the risk.

93.     Defendants' failure to employ the above supervisory practices or procedures resulted in Defendants' violation of Plaintiff's Constitutional rights.

94.     Defendants violated a clearly established Constitutional right.

95.     Defendants knew or reasonably should have known that their actions violated that right.

96.     The actions of Defendants as described above were willful, wanton, reckless, callously indifferent, and in conscious disregard for the safety of others.

97.     As a direct and proximate result of the above-described actions of Defendants, Plaintiff sustained serious physical and emotional injuries described above.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with punitive damages, interest, costs, attorneys' fees, and any additional relief the court deems appropriate.

**COUNT V: Assault and Battery**
**Plaintiff v. Defendants Stokes and SEPTA**

98.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth here.

99.     Defendant Stokes is directly liable for his assault and battery on Plaintiff.

100.    At all relevant times, Defendant Stokes was acting within the course and scope of his employment with SEPTA and Defendant SEPTA is vicariously liable for the conduct of Defendant Stokes.

101.    Defendants' use of force and use of excessive force was intended to cause harmful and/or offensive contact with Plaintiff.

102.    Plaintiff was put in immediate apprehension of such contact.

-18-

103.     Harmful and/or offensive contact with Plaintiff, directly or indirectly resulted from Defendants' actions.

104.     Defendants' conduct was not authorized, justified or privileged.

105.     Defendants committed intentional torts against Plaintiff as described above by wrongful acts and/or unlawful violence, knowing their conduct was wrongful.

106.     Defendants' desire was to bring about the result or the result was substantially certain to follow from Defendants' actions.

107.     The force used by Defendant Officer Stokes was unreasonable and excessive under the circumstances and Defendants knew or should have known the force was unreasonable and excessive.

108.     Defendants SEPTA failed to properly train and supervise Defendants Officer Stokes.

109.     Defendant SEPTA directed and/or knew of and acquiesced to Defendant Stokes' wrongful conduct.

110.     The actions of Defendants were willful, wanton, reckless, callously indifferent and in conscious disregard to the safety of others, including Plaintiff.

111.     As a direct and proximate result of Defendants' willful and wanton conduct, Defendants are jointly and severally liable for the damages to Plaintiff.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with punitive damages, interest, costs, attorneys' fees, and any additional relief the Court deems appropriate.

**COUNT VI: Negligence**
**Plaintiff v. Defendants Officer Stokes and SEPTA**

112.     Plaintiff incorporates by reference all previous paragraphs as though fully set

forth here.

113.    Defendants owed a duty to Plaintiff.

114.    Defendants breached their duty to Plaintiff by using force that was excessive, assaulting and battering him, failing to have appropriate policies and procedures in place and failing to appropriately train in the appropriate use of force.

115.    Due to the negligence of Defendants, Plaintiff suffered serious physical and psychological injuries.

116.    The negligence, carelessness, and recklessness of Defendants included:

    a.    Failing to properly assess the situation;

    b.    Failing to attempt to de-escalate the situation;

    c.    Failing to attempt to use a lesser means of force, including but not limited to using no force;

    d.    Failing to exercise due care and/or act in a reasonable manner;

    e.    Failing to properly train regarding the use of force;

    f.    Failing to follow training regarding the use of force;

    g.    Failing to have and/or follow proper policies and procedures regarding the use of force;

    h.    Failing to investigate the incident;

    i.    Failing to have and/or follow procedures regarding documentation of incidents involving the use of force;

    j.    Failing to hire competent police officers;

    k.    Failing to screen police officers; and

    l.    Failing to discipline police officers.

117.    As a direct and proximate result of the negligence of Defendants, Plaintiff suffered serious physical and psychological injuries.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with punitive damages, interest, costs, attorneys' fees, and any additional relief the Court deems appropriate.

**COUNT VII: Intentional Infliction of Emotional Distress**
**Plaintiff v. Defendants Officer Stokes and SEPTA**

118.    The preceding paragraphs are incorporated in full here as though set forth in their entirety.

119.    A claim for intentional infliction of emotional distress can be maintained where the Defendants "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress." *Gray v. Hutzinger*, 147 A.3d 924, 927 (Pa. Super. 2016) (internal quotation marks and citations omitted).

120.    Defendant Stokes' conduct was extreme and outrageous by his decision to use excessive force despite Plaintiff posing no threat whatsoever.

121.    Defendant Stokes intentionally and/or recklessly caused the Plaintiff to suffer severe emotional distress because Defendant Stokes knew or should have known that shoving a citizen to the ground twice, despite no articulable threat, would cause severe emotional distress.

122.    Defendant Stokes' actions toward Plaintiff, in shoving him to the ground twice with no justification or articulable threat, was outrageous character, goes beyond all possible bounds of decency, and was atrocious and utterly intolerable in our civilized society.

123.    Defendant Stokes' actions toward Plaintiff have caused multiple physical impacts and continues to cause severe emotional distress and anxiety with physical manifestations.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with punitive damages, interest, costs, attorneys' fees, and any additional relief the Court deems appropriate.

## COUNT VIII: Negligent Infliction of Emotional Distress
## Plaintiff v. Defendants Officer Stokes and SEPTA

124.    The preceding paragraphs are incorporated in full here as though set forth in their entirety.

125.    In Pennsylvania, a cause of action for negligent infliction of emotional distress is permitted in four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa. 2011).

126.    Defendants negligently caused severe emotional distress to Plaintiff by their outrageous conduct as set forth in preceding paragraphs, including Defendant Stokes having twice shoved Plaintiff to the ground without any justification for doing so.

127.    Plaintiff has and continues to suffer physical manifestations of the severe emotional distress he hase experienced due to Defendants' negligence, recklessness and outrageous conduct.

128.    Defendants are liable for damages related to Plaintiff's severe emotional distress.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with punitive damages, interest, costs, attorneys' fees, and any additional relief the Court deems appropriate.

**FREIWALD LAW, P.C.**

By:  _____

AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
ZACHARY S. FEINBERG, ESQUIRE
Counsel for Plaintiff

Date:  December 7, 2021

## **VERIFICATION**

I, Alvin Tyler, am Plaintiff in the foregoing action, hereby verify that the statements

made in the foregoing Civil Action Complaint are true and correct to the best of my knowledge,

information and/or belief.  I understand that false statements hereunder made are subject to the

penalties of 18 Pa. C.S. §4904 relating to unsworn falsifications to authorities.

DocuSigned by:

*alvin Tyler*

111204FFF89C4F8...

ALVIN TYLER

Date:  12/7/2021